IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-CV-219-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ALANA SULLIVAN AND J. BRITTON TABOR, <br><br> *Plaintiffs*, <br><br> v. <br><br> MURPHY MEDICAL CENTER, INC. d/b/a ERLANGER WESTERN CAROLINA HOSPITAL and <br><br> CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY d/b/a ERLANGER HEALTH SYSTEM, d/b/a ERLANGER MEDICAL CENTER, <br><br> *Defendants*. | **BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE UNITED STATES' COMPLAINT IN INTERVENTION** |

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................1

**BACKGROUND** ............................................................................................................4

**STANDARD OF REVIEW** ............................................................................................6

**ARGUMENT** ..................................................................................................................9

**CONCLUSION** .............................................................................................................12

Page(s)

**Cases**

*U.S. ex rel. Ahumada v. NISH*,
   756 F.3d 268 (4th Cir. 2014). ........................................................................6, 7, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................8, 10

*Aziz v. Alcolac, Inc.*,
   658 F.3d 388 (4th Cir. 2011) ...............................................................................9, 10

*U.S. ex rel. Badr v. Triple Canopy, Inc.*,
   950 F.Supp.2d 888 (E.D. Va. 2013) ....................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................8, 10

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
   809 F.3d 365 (7th Cir. 2016) ...............................................................................8, 10

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
   198 F.R.D. 560 (N.D. Ga. 2000) .........................................................................12

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005) ...........................................................................8

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ...............................................................................11

*U.S. ex rel. Marlar v. BWXT Y-12, LLC*,
   525 F.3d 439 (6th Cir. 2008) ...............................................................................8

*U.S. ex rel. Martin v. Life Care Ctrs.*
   912 F. Supp. 2d 618 (E.D. Tenn. 2012) ..............................................................2

*U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ...............................................................................6, 7, 8, 10

*U.S. ex rel. Nicholson v. Medcom Carolinas, Inc.*,
   42 F.4th 185 (4th Cir. 2022) ................................................................................6, 7

*U.S. ex rel. Ribik v. HCR ManorCare, Inc.*,
   2017 WL 3471426 (E.D. Va. Aug. 10, 2017) ............................................7, 9, 10

*U.S. ex rel. Taylor v. Boyko*,
   39 F.4th 177 (4th Cir. 2022) ...................................................................................6

*Wheeler v. Acadia Healthcare Co., Inc.*,
   2023 WL 6035712 (W.D.N.C. July 27, 2023) ...................................................7, 10

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) ...............................................................................9, 11

**Statutes**

31 U.S.C. § 3730 ................................................................................................*passim*

**Other Authorities**

Federal Rules of Civil Procedure 9(b) and 12(b)(6) ..........................................*passim*

S. Rep. No. 99-345 (1986) ...........................................................................................2

# PRELIMINARY STATEMENT

Defendants Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Medical Center and Erlanger Health System ("Erlanger") and Murphy Medical Center, Inc. d/b/a Erlanger Western Carolina Hospital ("Murphy") (together, "Defendants") respectfully move for dismissal of the government's Information and Belief Allegations in its Complaint in Intervention, ("Dkt. 50" or "Complaint in Intervention") under Federal Rules of Civil Procedure 12(b)(6). (*See* Dkt. 50 ¶ 153.)

The government elected to partially intervene in this action, alleging that Erlanger paid physicians in excess of fair market value in violation of the Stark Law, which caused Erlanger to fraudulently bill Medicare for services in violation of the False Claims Act ("FCA").

The FCA authorizes relators to file lawsuits on behalf of the government under seal. 31 U.S.C. § 3730. At the time of filing, the relator also provides the government with a statement of material evidence that purportedly supports the relator's contentions. *Id.* § 3730(b)(2). The government "diligently shall investigate" the allegations. *Id.* § 3730(a). The FCA provides the government with sixty days to notify the court regarding whether it will intervene in the action, a time period that Congress believed more than adequate for the government to determine

1

whether to proceed with the action.[1] The government can, upon a showing of good cause, extend the sixty-day review period. *Id.* § 3730(b)(3). The FCA also provides the government with investigative tools, such as the ability to issue Civil Investigative Demands, so it can timely complete its review. *Id.* § 3733.

Here, the docket sheet reveals that during the roughly three-year period from Relators filing their Complaint under seal to the government's intervention and subsequent filing of its Complaint in Intervention, there is a gap from Dkt. 3 to Dkt. 43. Presumably, this would encompass the government making multiple requests for extension of the sixty-day period, representing its progress in diligently investigating the underlying allegations. After the multi-year period the case was under seal, a process that involved the production of nearly 10,000 pages of documents in response to six independent sets of requests for information issued to Erlanger between February 2022 and January 2024, the government notified the Court that it would intervene with respect to Relators' allegations that six Erlanger

---

[1] *See, e.g.,* S. Rep. No. 99-345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289-90 (Senate Judiciary Committee Report on seal provision noting that "with the vast majority of cases 60 days"—the time period set out in the statute for the Department of Justice to review while the case remain under seal, 31 U.S.C. § 3730(b)(2)—"is an adequate amount of time to allow Government coordination, review and decision"); *cf. U.S. ex rel. Martin v. Life Care Ctrs.* 912 F. Supp. 2d 618, 623 (E.D. Tenn. 2012) (noting that the "length of time this case has remained under seal"—four years—"borders on the absurd").

employment arrangements violated the Stark Law but that it would decline to intervene in Relators' remaining allegations. (Dkt. 44.)[2]

Astonishingly, and notwithstanding statutory requirements and ample opportunity to investigate, the government's Complaint in Intervention *still* manages to include allegations based only upon "information and belief." (Dkt. 50. ¶ 153.) Specifically, aside from a list of six physicians that it alleges to have violated the Stark Law, and a health system that has thousands of financial relationships with employed and non-employed physicians, the government contends that it "believes" that an *unidentified* number of *unidentified* additional "compensation arrangements" over *unidentified* time periods with *unidentified* additional "physicians" involved *unidentified* compensation that exceeded fair market value, and that, based on "information and belief," these *unidentified* compensation arrangements "did not fit within an exception to the Stark Law" and thus necessarily "gave rise to additional False Claims Act violations" without pointing to any allegedly false claims presented to the government. (*Id.* (hereinafter the "Information and Belief Allegations").) Because the government's Information and Belief Allegations do

---

[2] North Carolina and Tennessee have refused to participate in this lawsuit. (Dkt. 45.)

not satisfy Federal Rules of Civil Procedure 9(b) and 12(b)(6), they should be dismissed from the Complaint in Intervention.

## BACKGROUND

Erlanger is a non-profit health system headquartered in Chattanooga, Tennessee. (Dkt. 50 ¶ 4.) On August 12, 2021, Relators filed a *qui tam* lawsuit under seal on behalf of the United States and the States of North Carolina and Tennessee. (Dkt. 2.) Relators alleged that Erlanger's financial arrangements with various employed and non-employed physicians violated the Stark Law and the AKS. (Dkt. 50 ¶¶ 121–238.)

On July 26, 2024, the government filed its Complaint in Intervention against Erlanger and Murphy alleging that from 2014 through at least 2021, Defendants billed Medicare for claims referred by employed physicians with financial arrangements that did not satisfy the Stark Law. (*Id.* ¶ 2.) Specifically, the government alleges that, over the course of certain time periods, Erlanger had certain compensation arrangements through which it paid six physicians—Drs. Harish Manyam, Jesse Doty, Stephen DePasquale, Mark Freeman, Daniel Kueter, and Peter Boehm, Jr. (hereinafter the "Six Physicians")—certain amounts that exceeded fair market value in violation of the Stark Law. (*See id.* ¶¶ 86–93, 96–104, 112–139, 145–152.) The government pleads purported examples of "representative" false

4

Case 1:21-cv-00219-MR-WCM    Document 74    Filed 09/17/24    Page 8 of 19

claims paid by Medicare for services performed by the Six Physicians. (*See id.* ¶¶ 180–89.)[3]

In stark contrast to its allegations against the Six Physicians, the government attempts to shoehorn in allegations that an unidentified number of additional unidentified compensation arrangements also "gave rise to additional False Claims Act violations." (*Id.* ¶ 153 (the referenced "Information and Belief Allegations").) In support of the Information and Belief Allegations, the government offers simply that it "believes" that an unidentified number of unidentified additional compensation arrangements over unidentified time periods with unidentified additional "physicians" involved unidentified compensation that exceeded fair market value. (*Id.*) It explains that, based on "information and belief," these unidentified compensation arrangements "did not fit within an exception to the Stark Law" and thus necessarily "gave rise to additional False Claims Act violations" without pointing to any allegedly false claims presented to the government. (*Id.*)

For the reasons discussed below, the government's Information and Belief Allegations should be dismissed under Rules 9(b) and 12(b)(6).

---

[3] While Defendants must assume the government's allegations are correct at this stage, Defendants will demonstrate that the government's contentions are wrong and that compensation paid to these physicians were consistent with the Stark Law.

5

Case 1:21-cv-00219-MR-WCM     Document 74     Filed 09/17/24     Page 9 of 19

## STANDARD OF REVIEW

To establish an FCA violation, the government must show that Defendants knowingly presented or caused the presentation of false claims that were material to the government's determination to pay. *See*, *e.g. U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022); *U.S. ex rel. Nicholson v. Medcom Carolinas, Inc.*, 42 F.4th 185, 193 (4th Cir. 2022); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014). Under Rule 9(b), the government must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Ahumada*, 756 F.3d at 280 (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). Additionally, the government may not merely allege a fraudulent scheme but rather must identify a specific false claim in order to meet the Rule 9(b) standard. *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456–57 (4th Cir. 2013) (rejecting "a more relaxed pleading standard" and holding that "when a defendant's actions, as alleged and as reasonably inferred from the allegations *could have led*, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." (Emphasis in original)).[4]

---

[4] The purpose of Rule 9(b), in FCA actions, is "to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations." *Nicholson*, 42 F.4th at 195; *see also Ahumada,* 756 F.3d at 280-81.

Pleadings that rely simply on a plaintiff's "belief" or "information and belief" are insufficient to satisfy Rule 9(b). *See, e.g., Nathan*, 707 F.3d at 457 (noting that an FCA plaintiff may not merely describe a private scheme and then "allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government"); *Wheeler v. Acadia Healthcare Co., Inc.*, 2023 WL 6035712, at *7 (W.D.N.C. July 27, 2023), *report and recommendation adopted*, 2023 WL 6060344 (W.D.N.C. Sept. 18, 2023) (noting that relator alleged therapy notes were falsified at four specific facilities and finding that relator failed to satisfy Rule 9(b) when relator pled "upon information and belief" that this "practice is corporate policy" and occurred at multiple other facilities (internal quotation marks omitted) (citing *U.S. ex rel. McClain v. Nutritional Support Services, L.P.*, 2020 WL 2464655, at * 6 (D.S.C. Mar. 16, 2020)); *U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F.Supp.2d 888, 900 (E.D. Va. 2013), *rev'd on other grounds*, 857 F.3d 174 (4th Cir. 2017); *U.S. ex rel. Ribik v. HCR ManorCare, Inc.*, 2017 WL 3471426, at *3 (E.D. Va. Aug. 10, 2017) (holding that a pleading that rests "upon information and belief that wrongful conduct occurred . . . does not state the who, what, when, where, and how the alleged fraud occurred with the particularity required in Rule 9(b)

7

(citing *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016)).[5]

To survive a Rule 12(b)(6) motion, the government must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of the motion to dismiss, the district court accepts factual allegations as true but should disregard any legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Nathan*, 707 F.3d at 455 (stating that "[f]acts that are 'merely consistent with' liability do not establish a plausible claim to relief. In addition, although we must view the facts alleged in the light most favorable to the plaintiff, we will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" (internal citation and quotation omitted)). Further, Relator's "'factual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudging [her] claims across the line from conceivable to plausible'." *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555, 570).

---

[5] *See also Bogina*, 809 F.3d at 370 (holding that Rule 9(b) requires that "in alleging fraud … a party must state with particularity the circumstances constituting fraud" and thus allegations "based on 'information and belief' … won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that … .'"); *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445–46 (6th Cir. 2008) (finding that because an FCA Subsection (a)(1) claim requires proof of presentment of a false claim to the government, the relator's allegation that such claims were made upon "information and belief" does not satisfy Rule 9(b)); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013–14 (11th Cir. 2005) (finding inadequately pleaded claims based on 'information and belief' when allegations were broad and based on 'improper practices'").

8

# ARGUMENT

Because the government's Information and Belief Allegations rely exclusively on the government's "belief" that an unidentified number of unidentified compensation arrangements violated the Stark Law, and because the government does not attempt to connect any of these unidentified Stark Law violations to any claim presented to the government, these allegations should be dismissed under Rules 9(b) and 12(b)(6).

The government's Information and Belief Allegations do not satisfy Rule 9(b). The government does not plead (i) which unidentified physicians received compensation that exceeded fair market value; (ii) when such unidentified compensation was received; (iii) what such unidentified compensation was; (iv) how such unidentified compensation exceeded fair market value; or (v) what compensation the physician should have received. The government cannot satisfy Rule 9(b) without providing any particular details regarding the "who, what, when, or how" underlying the allegedly false claims. *See Ahumada*, 756 F.3d at 280; *Wilson*, 525 F.3d at 379; *Ribik*, 2017 WL 3471426, at *3.

Even worse, not only does the government fail to provide any particular details regarding these unidentified compensation arrangements, but it also fails to even attempt to link any such arrangement to any claim submitted to the government for payment. This is entirely insufficient for purposes of Rule 9(b), as, at most, these

unidentified compensation arrangements "*could have led*, but *need not necessarily have led*" to false claims. *Nathan*, 707 F.3d at 456–57. Finally, the government's reliance solely on its "belief" that an unidentified number of unidentified additional "compensation arrangements" over unidentified time periods with unidentified additional "physicians" involved unidentified compensation that exceeded fair market value, and on its "information and belief," these unidentified compensation arrangements "did not fit within an exception to the Stark Law" and thus necessarily "gave rise to additional False Claims Act violations" cannot satisfy Rule 9(b). *Nathan*, 707 F.3d at 457; *Wheeler*, 2023 WL 6035712, at *7; *Ribik,* 2017 WL 3471426, at *3; *Bogina*, 809 F.3d at 370.[6]

Further, as this circuit has pointed out on multiple occasions, the government's Information and Belief Allegations also undermine the purposes underlying Rule 9(b) because they would permit a plaintiff to generally assert an allegation of fraud and then utilize the costly discovery process to learn whether it actually has a fraud claim in the first instance. *See, e.g., Wilson*, 525 F.3d at 380

---

[6] The government's Information and Belief Allegations are similarly defective under Rule 12(b)(6). The government does not plead any facts, let alone plausible facts, that any of the Defendants *knowingly* breached any rule, regulation or standard with respect to the unidentified compensation arrangements and entirely fails to link any unidentified compensation arrangement with any unidentified physician involving unidentified compensation in excess of fair market to any claim submitted to the government, instead simply asking the Court to speculate that it must have occurred. The government's allegations should be dismissed, as speculative allegations do not satisfy Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555, 570; *Takeda*, 707 F.3d at 455; *Aziz*, 658 F.3d at 391.

("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent." (citation omitted)); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) ("The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." (internal quotations omitted)). Additionally, without specifying which of the potentially thousands of financial relationships Defendants have had with employed and non-employed physicians during the period covered in the Complaint in Intervention—which the government has had nearly three years to investigate at great expense for Defendants—the government will likely want an equally expansive, undisciplined approach to discovery as this action proceeds seeking discovery into each of those relationships. As one court pointed out:

> The Plaintiff wants a ticket to the discovery process. If given such a ticket, the next stage of this litigation is clear. The Plaintiff will request production of every lab test claim submitted by the Defendant over the last ten years. At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. On the other hand, the Defendant may choose to resist the discovery. In that case, the Court will be presented with the dilemma of allowing an unlimited fishing expedition or no discovery at all because of the difficulty in fashioning logical and principled limits on what has to be produced. The particularity requirement of Rule 9(b), if enforced, will not only protect defendants

against strike suits, but will result in claims with discernable boundaries and manageable discovery limits.

*U.S. ex rel. Clausen v. Lab. Corp. of Am.,* 198 F.R.D. 560, 564 (N.D. Ga. 2000) (dismissing FCA action under Rule 9(b), *aff'd,* 290 F.3d 1301.

The government sought numerous extensions of its deadline to intervene while conducting a nearly three-year sealed investigation into Erlanger's physicians' relationships, issuing six sets of requests for documents and information. At the conclusion of that investigation, it identified employment relationships with the Six Physicians that it contends did not comply with the Stark Law. The government cannot simply tack on vague Information and Belief Allegations in order to seek broad and costly discovery into virtually every financial arrangement Erlanger had with potentially hundreds of physicians over the last decade. To the contrary, this is precisely what Rule 9(b) was designed to proscribe. *See id.* The government's Information and Belief Allegations relating to financial arrangements beyond the Six Physicians should be dismissed.

## **CONCLUSION**

For these reasons, Defendants respectfully request that this Court dismiss the government's Information and Belief Allegations in its Complaint in Intervention.

DATED this 17th day of September, 2024.

Respectfully submitted,

*/s/ Phillip T. Jackson*
Phillip T. Jackson
Bryant G. Cross
**ROBERTS & STEVENS, P.A.**
City Centre Building
301 College St. 400
Asheville, NC 28801
(269) 312-5784
bcross@roberts-stevens.com
pjackson@roberts-stevens.com

Brian D. Roark
Molly K. Ruberg
Taylor M. Sample
**BASS BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
 (615) 742-6200
broark@bassberry.com
mruberg@bassberry.com
taylor.sample@bassberry.com

Robert Salcido
**AKIN GUMP STRAUSS HAUER & FELD, LLP**
Robert S. Strauss Tower
2001 K Street NW
Washington, DC 20006
(202) 887-4095
rsalcido@akingump.com

*Counsel for Defendants Murphy Medical Center, Inc. and Chattanooga-Hamilton County Hospital Authority*

## CERTIFICATION OF COMPLIANCE REGARDING USE OF ARTIFICIAL INTELLIGENCE

The undersigned certifies that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at my discretion as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

DATED this 17th day of September, 2024.

*/s/ Phillip T. Jackson*
PHILLIP T. JACKSON

# CERTIFICATE OF SERVICE

I certify that on September 17, 2024, the foregoing was filed electronically with the Clerk of Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, which includes the following:

Charles H. Rabon, Jr.
Rabon Law Firm, PLLC
413 S. Sharon Amity Rd
Suite C
Charlotte, NC 28211
crabon@usfraudattorneys.com

Scott C. Withrow
Withrow, McQuade & Olsen, LLP
3379 Peachtree Road, Suite 970
Atlanta, GA 30326
swithrow@wmolaw.com

Robert Boyd
United States Department of Justice
Civil Division, Fraud Section
175 N Street NE
Washington, DC 20002
202-616-4139
robert.c.boyd@usdoj.gov

Marlan B. Wilbanks
Susan S. Gouinlock
Wilbanks and Gouinlock, LLP
3490 Piedmont Rd., NE, Suite 1010
Atlanta, GA 30305
mbw@wilbanksgouinlock.com
ssg@wilbanksgouinlock.com

Holly H. Snow
Julia Kay Wood
Katherine Tenfelde Armstrong
US Attorney's Office
Western District of North Carolina
227 W.Trade Street, Suite 1650
Charlotte, NC 28202
holly.h.snow@usdoj.gov
julia.wood@usdoj.gov
Katherine.Armstrong@usdoj.gov

/s/ Phillip T. Jackson